UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES PERKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:24-cv-01396-JPH-DML |
| | ) |
| CHRIS LANE Bartholomew Co. Sheriff, | ) |
| | ) |
| Defendant. | ) |

**ORDER SCREENING AND DISMISSING AMENDED COMPLAINT, DENYING MOTIONS FOR COUNSEL, AND DIRECTING ENTRY OF FINAL JUDGMENT**

The Court screened Plaintiff James Perkins's original complaint, which alleged an unconstitutional delay in responding to his healthcare requests while he was a detainee at the Bartholomew County Jail ("the Jail"), and determined it was subject to dismissal. Dkt. 36. Specifically, the complaint was dismissed because he had named only Bartholomew County Sheriff Chris Lane as a defendant, and there were insufficient allegations either that Sheriff Lane was personally involved in any alleged deprivation of Mr. Perkins's constitutional rights, or that the Bartholomew County Sheriff's Department had a policy or practice that could subject it to liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *Id.* at 3-4. The Court gave Mr. Perkins the opportunity to file an amended complaint, and he has done so. Dkt. 51. He also has filed two motions for counsel, which the Court addresses in this Order. Dkts. 38, 48. The Court now screens Mr. Perkins's amended complaint under 28 U.S.C. § 1915A and concludes that although he has named more appropriate defendants, he still does not state any viable claims.

## I. Screening Standard

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes pro se complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. The Amended Complaint

Although a plaintiff need not plead legal theories in a complaint, *see* Fed. R. Civ. P. 8(a), Mr. Perkins has identified the theories he wishes to use—violations of his due process rights under the Fifth and Fourteenth Amendments, his equal protection rights under the Fourteenth Amendment, and cruel and unusual punishment under the Eighth Amendment. Where a pro se litigant has expressly stated the legal theories he wishes to pursue, the district court is not required to analyze whether the allegations in the complaint might state a claim

under a different legal theory. *See Larry v. Goldsmith*, 799 F. App'x 413, 416 (7th Cir. 2016) (citing *Clancy v. Office of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595, 606-07 (7th Cir. 2009)). Thus, the Court analyzes Mr. Perkins's claims only under the theories he has identified.

The Court accepts Mr. Perkins's factual allegations as true at the pleading stage but not his legal conclusions. *See Iqbal*, 556 U.S. at 678 ("we must take all of the factual allegations in the complaint as true," but "we 'are not bound to accept as true a legal conclusion couched as a factual allegation'") (quoting *Twombly*, 550 U.S. at 555)).

The amended complaint names as defendants (1) Sheriff Lane; (2) Officer Lydia Johns; (3) Officer Shane Hickman; (4) Head Nurse Melissa Brown; (5) "Medical Staff"; (6) Jail Commander Mr. Arnholt; (7) Alana Foreman; (8) Jackson Fox; and (9) Officer Mr. Edgars.

Mr. Perkins alleges that on June 18, 2024, he submitted a healthcare request based on "headaches, and blood pressure problems." Dkt. 51 at 13. On June 20, Nurse Brown responded to the request by saying, "medical has nothing to do with cleaning the blocks." *Id.* For some unknown reason, this response was not at all related to Mr. Perkins's healthcare request.

On July 10, Mr. Perkins submitted a second healthcare request for blood pressure problems and headaches. On July 12, Officer Hickman responded to this request by saying that he would assist him. Officer Hickman then took Mr. Perkins's blood pressure and got a reading of 180 over 130. Also on July 12, Officer Lydia Johns took Mr. Perkins's blood pressure and got a reading of 180

3

over 100. Mr. Perkins alleges that Officer Johns then "prescribed" a blood pressure medication to him that at first he identifies as "claudine," which the Court understands to be Clonidine, a blood pressure medication that requires a prescription. *See* https://www.mayoclinic.org/drugs-supplements/clonidine-oral-route/description/drg-20063252 (last updated June 1, 2025). However, Mr. Perkins says later in the amended complaint that "only correctional officer prescribed the blood pressure medicine that I . . . am still currently on as of today 2-9-2025," and he identifies the medication as Lisinopril. This is a different blood pressure medication, which also requires a prescription. *See* https://www.mayoclinic.org/drugs-supplements/lisinopril-oral-route/description/drg-20069129 (last updated Aug. 1, 2025).

Again, also on July 12, Mr. Perkins filed grievances about Officer Hickman and Officer Johns, complaining that neither of them should have attempted to provide medical care to him. Mr. Perkins had to use the Jail's electronic kiosk system to submit these grievances because there were no paper grievances available at the time.

On July 17, Officer Johns threatened Mr. Perkins with placement in segregation and to have his kiosk privileges revoked if he did not stop filing frivolous grievances. On that same day, Mr. Perkins attempted to submit another grievance about Officer Johns on the kiosk system and found that he was unable to access it. This made it difficult or impossible for Mr. Perkins to check the balance of his trust fund, to order commissary items, to file grievances, and to

4

submit healthcare requests. Mr. Perkins does not identify any healthcare needs that went unaddressed after this date, however.

On July 18, Mr. Perkins saw a nurse in the hallway, which is the first time he actually saw a medical provider since his original June 18 healthcare request. There is no indication that this nurse provided any additional or different treatment than had already been provided to Mr. Perkins. The Court also notes that Mr. Perkins does not allege that he came to the Jail with high blood pressure medication and was deprived of it thereafter.

On August 7, Mr. Perkins's kiosk privileges were reinstated. Shortly thereafter, Mr. Perkins was transferred to the custody of the Indiana Department of Correction. Dkt. 17. He has since been released from incarceration altogether. Dkt. 60.

### III. Discussion

Applying the screening standard to the facts alleged in the amended complaint, it must be dismissed for failure to state a claim upon which relief may be granted. Mr. Perkins was a pretrial detainee when he was at the Jail, so his medical care claims are governed by the Fourteenth Amendment, not the Eighth Amendment. Such claims are analyzed according to the objective unreasonableness inquiry laid out in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). A defendant violates a pretrial detainee's due process right to constitutionally acceptable medical care if:

> (1) there was an objectively serious medical need; (2) the defendant committed a volitional act concerning the [plaintiff's] medical need; (3) that act was objectively unreasonable under the circumstances in terms of responding to the [plaintiff's] medical need; and (4) the defendant act[ed] "purposefully, knowingly, or perhaps even recklessly" with respect to the risk of harm.

*Gonzalez v. McHenry County, Ill.*, 40 F.4th 824, 828 (7th Cir. 2022) (quoting *Miranda*, 900 F.3d at 353–54). "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019) (cleaned up). "A detainee must prove more than negligence but less than subjective intent–something akin to reckless disregard." *Miranda*, 900 F.3d at 353.

  First, regarding Nurse Brown, Mr. Perkins's allegations show that there was some kind of confusion or mix-up regarding his June 18 request for healthcare. She allegedly responded to a request about high blood pressure and headaches by saying medical staff was not responsible for cleaning the Jail blocks. Even if Nurse Brown's response was negligent, this is insufficient to support a plausible inference that she engaged in a "volitional act" regarding Mr. Perkins's alleged medical need. Despite pretrial detainees being entitled to greater constitutional protections than convicted inmates, it still is the case that "*negligently* inflicted harm" is "categorically beneath the threshold of constitutional due process." *Kingsley*, 576 U.S. at 396.

Nurse Brown's response to Mr. Perkins's June 18 request did not violate his due process rights.

Second, regarding Officer Hickman's and Officer Lyons's July 12 responses to Mr. Perkins's July 10 healthcare request, the crux of Mr. Perkins's complaint is that they were unqualified to assess whether he had high blood pressure and to prescribe him medication for it. Mr. Perkins, however, fails to identify how he was harmed or injured by this action. "In order to succeed in a § 1983 suit, a plaintiff must establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019). Even if Officer Johns would have violated state medical licensing procedures by giving Mr. Perkins a blood pressure medication, violations of state law do not infringe the federal constitution. *See Beley v. City of Chicago*, 901 F.3d 823, 828 (7th Cir. 2018).

There is no allegation that Mr. Perkins already had a prescription blood pressure medication when he came to the Jail and that he was not allowed to have it. So, according to his own allegations, he came into the Jail without such medication and left with it after Officers Hickman and Johns obtained elevated blood pressure readings from him two days after his second healthcare request. He continued or continues to take such medication, presumably after he was medically evaluated and allowed to continue receiving it. This does not allege an "injury" or a violation of his constitutional rights.

7

Third, Mr. Perkins alleges that Officer Johns violated his due process and/or equal protection rights when she temporarily deprived him of access to the Jail's electronic kiosk system for about 3 weeks, while other detainees did not have their access limited. Again, Mr. Perkins fails to show how he was injured by such limitation. He had no independent constitutional right to file grievances. *See, e.g., Antonelli v. Sheahan*, 81 F.3d 1422, 1430-31 (7th Cir. 1996). He had no independent constitutional right to purchase commissary items. *See, e.g., Robinson v. Illinois State Correctional Center (Stateville) Warden*, 890 F.Supp. 715, 718 (N.D. Ill. 1995) ("Nor can plaintiff reasonably contend that the Constitution embodies some right of a prisoner to purchase anything he wants from the commissary while in the custody of the state"). Nor can the Court identify any independent right of an inmate to see their trust account balance. Such information can be relevant when an inmate moves to proceed in federal court *in forma pauperis*, and Mr. Perkins did initially claim he could not get this information from the Jail. But Mr. Perkins eventually was able to submit that information to this Court and his *in forma pauperis* motion was granted. Dkt. 22. Finally, he does not show that it was impossible for him to request healthcare through other means, or that he needed to do so during that time frame.

To the extent Mr. Perkins alleges his equal protection rights were violated when his kiosk privileges were limited while others' access were not, to state such a claim claim, Mr. Perkins must allege that (1) he was a member of a protected class, (2) he was treated differently from a similarly situated member of an unprotected class, and (3) the defendants were motivated by a

8

discriminatory purpose. *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017). Mr. Perkins's amended complaint does not contain any allegations regarding membership in a protected class, and so it does not state an equal protection claim. To the extent Mr. Perkins believes he was the victim of "class-of-one" discrimination, there must be allegations sufficient to support the inference that he was intentionally treated differently than others similarly situated and with no rational basis for the difference in treatment. *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 601 (2008). Even if Mr. Perkins was treated differently than others, a rational basis existed for that treatment, i.e. the belief that he was abusing the kiosk system.

Finally, regarding named defendants Sheriff Lane, "Medical Staff", Jail Commander Mr. Arnholt, Alana Foreman, Jackson Fox, and Correctional Officer Mr. Edgars, the amended complaint fails to state what actions they personally engaged in that would have violated Mr. Perkins's constitutional rights. "'To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). For this purpose, each defendant is considered independently. *Id.*

Mr. Perkins's amended complaint fails to state any valid claims, and it is **dismissed with prejudice**. Because the Court has already granted Mr. Perkins the opportunity to file an amended complaint, it will not provide another one. Also, because this case is being dismissed for failure to state a claim, Mr. Perkins

9

is warned that it may constitute a "strike" under 28 U.S.C. § 1915(g), which limits a prisoner's ability to proceed *in forma pauperis* after having three cases or appeals dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. *See Hill v. Madison Cty., Ill.*, 983 F.3d 904, 906 (7th Cir. 2020) ("It makes good sense for a judge who believes a dismissal to come within the scope of § 1915(g) to include notice to that effect," even though later courts must make the conclusive determination of whether each prior dismissal meets the statutory definition).

Furthermore, it appears this would be Mr. Perkins's third case that has been dismissed for failure to state a claim. *See Perkins v. Whitted Law*, No. 1:24-cv-00886-SEB-MG, dkt. 36 (S.D. Ind. Oct. 22, 2024); *Perkins v. Lane*, No. 1:24-cv-00887-JRS-TAB, dkt. 73 (S.D. Ind. Mar. 20, 2025). Therefore, he may be prohibited from proceeding *in forma pauperis* in federal court in the future if he files another lawsuit *while a prisoner* and if he is not in "imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

### IV. Motions for Counsel

Litigants in federal civil cases do not have a constitutional or statutory right to court-appointed counsel. *Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018). Instead, 28 U.S.C. § 1915(e)(1) gives courts the authority to "request" counsel. *Mallard v. United States District Court*, 490 U.S. 296, 300 (1989). "'When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing

10

so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)).

Because Mr. Perkins's amended complaint fails to state a viable claim for relief, the case must be dismissed. The Court addresses the motions only to clarify that it finds Mr. Perkins was capable of filing a competent amended complaint without the assistance of counsel.

The question of competence "requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims himself." *Eagan*, 987 F.3d at 682 (citing *Pruitt*, 503 F.3d at 655). "Specifically, courts should consider 'whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself.'" *Id.* (quoting *Pruitt*, 503 F.3d at 655). "This assessment of the plaintiff's apparent competence extends beyond the trial stage of proceedings; it must include 'the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.'" *Id.* (quoting *Pruitt*, 503 F.3d at 655).

"[T]he merit of a plaintiff's claim is another factor a district court may consider while making an individualized determination whether to recruit counsel based on the plaintiff and the claim in front of it." *Watts v. Kidman*, 42 F.4th 755, 766 (7th Cir. 2022). Specifically, the Court may consider all "'available information and the judge's experience to assess the importance and potential merits of the case and to assign priority accordingly.'" *Id.* at 763 (quoting *McCaa*

11

*v. Hamilton*, 959 F.3d 842, 845 (7th Cir. 2020)). This factor reflects that the decision to recruit counsel remains a practical one because "the decision whether to recruit a lawyer for a particular plaintiff is made against the twofold backdrop of a high volume of indigent, pro se litigants (particularly incarcerated litigants) and a small pool, by comparison, of attorneys willing and able to take those cases on pro bono." *Id.*

The Court notes that Mr. Perkins is a regular filer in this Court. He has demonstrated the ability to follow and respond to Court orders intelligently. The Court identified the problems with his original complaint, and he responded to that screening order by addressing those problems. However, even doing so, and even though he was able to thoroughly discuss and communicate his allegations to the Court, he simply does not state a viable claim under § 1983.

The Seventh Circuit has found that "until the defendants respond to the complaint, the plaintiff's need for assistance of that counsel . . . cannot be gauged." *Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013); *see also Mapes v. Indiana*, 932 F.3d 968, 971 (7th Cir. 2019) (acknowledging "the difficulty in accurately evaluating the need for counsel in the early stages of pro se litigation"). That statement from *Kadamovas* is not a "bright-line rule," but in this case, Mr. Perkins has not shown he needed counsel to assist him to "investigate and flesh out any claim that may exist." *Mapes*, 932 F.3d at 971-72.

12

## V. Dismissal

For the foregoing reasons, this action is **dismissed with prejudice** pursuant to 28 U.S.C. § 1915A. The **clerk is directed** to enter final judgment. Mr. Perkins's motions to appoint counsel, dkts. [38] and [48], are **denied.**

**SO ORDERED.**

Date: 9/4/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JAMES PERKINS
P.O. Box 25
Elizabethtown, IN 47232